STATE, *et al.,* v. ST. LUCIE INLET DISTRICT and PORT AUTHORITY, *et al.*

176 So. 59.
Opinion Filed April 8, 1937.
On Rehearing May 3, 1937.
On Further Rehearing July 31, 1937.

*Carroll Dunscombe,* for Appellants;

*Evans Crary* and *Smith & Kanner,* for Appellees.

PER CURIAM.—This is a companion case to that of State of Florida, *et al.,* v. Special Road and Bridge District No. 4 of Martin County, Florida, *et al.,* and the same questions are presented here and the same contentions made as were presented and made in that case.

The decree appealed from is affirmed upon authority of the opinion and judgment in that case this day filed.

So ordered.

ELLIS, C. J., and WHITFIELD, TERRELL, BROWN, BUFORD and DAVIS, J. J., concur.

## ON REHEARING.

BUFORD, J.—Appellant has filed petition for rehearing in this case contending that the taxing unit involved is a drainage conservation or reclamation district and the issuance of bonds thereby is controlled by the provision of Chapter 12003, Acts of 1927.

The district involved is St. Lucie Inlet District established by the provision of Chapter 9631, Special Acts of 1923, which act was amended by Chapter 13808, Acts of 1929. The latter Act was subsequent to the issuance of the bonds sought to be refunded and which refunding bonds are here sought to be validated.

Sections 12, 13 and 14 of the Act provide as follows:

"Sec. 12. The Board of Commissioners of said St. Lucie Inlet District is hereby authorized and empowered, by resolution to call and order an election in said District to determine whether or not bonds shall be issued by said District for the purpose of raising funds to construct and maintain said inlet and to deepen said St. Lucie River and to complete the canals, waterways, inlets and other works authorized by this Act, and to acquire and pay for rights-of-way and other property authorized by this Act to be acquired by said District, and to pay the expenses incident to all such work, or any other expenses necessary in carrying out the general purposes of this Act. Only duly qualified electors who are freeholders residing within said district and are taxpayers on real and personal property located within said district, shall vote at said election. In

the resolution calling and ordering said election said Board shall specify the amount of bonds proposed to be issued for said purposes, the denominations thereof and the rate of interest (not exceeding seven per cent per annum), which said bonds shall bear and shall also specify the date which said bonds shall bear and the time or times of maturity of said bonds. Said Board of Commissioners shall cause notice of said election signed by the Chairman and Secretary of said Board to be given by publishing said notice in a newspaper published in Palm Beach and St. Lucie Counties, Florida, once each week for four consecutive weeks prior to said election. In said notice they shall designate the polling place or places for said election, and shall name the inspectors and clerks of said election who shall be appointed by said Board. The ballots used in said election shall be prepared and furnished by said Board. Said election shall be held in substantial conformity, as near as may be, to the laws of the State of Florida applicable to general State elections, the Board of Commissioners of the District performing the duties and exercising the powers which would be performed and exercised by the Board of County Commissioners in the holding of such general elections. The inspectors and clerks of said election shall make return to the Board of Commissioners of St. Lucie Inlet District, of said election and said Board shall within two weeks after said election meet and canvass the returns and declare the results thereof. The form of the ballot in such bond election shall be 'For Inlet Bonds' and 'Against Inlet Bonds'.

"Sec. 13. If for any reason such election should be held or declared to be illegal, said Board may call and order another election or other elections for said purposes, and shall give notice thereof and provide for the holding of the same and canvass and declare the results in accordance with the provisions of the preceding section.

"Sec. 14. If a majority of the votes cast at any such bond election in said District shall be in favor of the issuance of the Bonds of said District, said Board shall be authorized and required to issue such bonds to the amount specified in the resolution ordering said election, and the proceeds of the sale thereof shall be used solely for the purposes prescribed in this Act. As soon as practicable after the returns of said election are canvassed said Board shall advertise said bonds for sale by publication once each week for four consecutive weeks in a newspaper published in Palm Beach and St. Lucie Counties, Florida, and said Board of Commissioners are authorized to sell said bonds for the best price obtainable, and the proceeds derived from such sale shall be used for the purposes provided for in this Act. If no satisfactory bid is received said Board may re-advertise said bonds for sale in the manner provided for in this section as often as they may deem necessary, until a satisfactory bid is received and said bonds are finally sold."

The powers of the Board of Commissioners of St. Lucie Inlet District are to construct and thereafter maintain an inlet connecting the mouth of the St. Lucie River with the Atlantic Ocean to deepen the St. Lucie River in the said District and thereafter maintain the same.

Section 8 of chapter 9631 contains the following:

"The said inlet shall be constructed at a convenient and proper place, as shall be determined by said Commissioners, and they are authorized and empowered to do all things and perform all acts necessary, proper or convenient for said purposes or in that connection. Said inlet or waterway shall be constructed and maintained and the said river shall be deepened for the preservation of the public health and for the public good and for the use of the public and of the said District; and the opening, cutting and maintenance of the said inlet or waterway at some point within said District

between said river and the Atlantic Ocean, and also the deepening of said river are hereby found and declared to be a public purpose and necessary for the preservation of the public health and for the public use of shipping and transportation, and for the welfare of said District and the inhabitants thereof. The location of the said inlet or waterway shall be determined by said Board upon the approval and recommendation of the chief engineer of the Board. In determining the location of said inlet or waterway, due consideration shall be given by said Board to the following.

"(a) The kind and nature of material which will be encountered in excavating for the foundation and in removing the material preparatory to the construction of said inlet or waterway, and the cost of the work to be done in connection therewith.

"(b) The natural depth of the water on both the Atlantic Ocean and St. Lucie River ends of said proposed inlet or waterway as affecting the future maintenance of the channel and the efficiency and operation of said waterway.

"(c) The convenience which will result to the public and to the inhabitants of said District in using said inlet or waterway.

"(d) All other features which from a sanitary, economic or engineering standpoint should be considered, as being important in determining the exact location of said inlet or waterway.

"If the chief engineer of the Board is doubtful, or if all the Board or any member of said Board are doubtful, of the best location to be chosen for said inlet or waterway, the chief engineer with the approval and at the direction of the Board, shall employ a consulting engineer, who with said chief engineer shall make and file with said Board a

joint report recommending the location of said inlet or waterway, and the findings in such report, if approved by the Board, shall fix the location of said inlet or waterway.

"Provided, however, that no such inlet or waterway shall be made or constructed until the general plan of such inlet or waterway shall have been approved by the War Department, if such approval is necessary; and provided that for any damage or injury occasioned or occurring to private property by washing, overflowing of lands, or from other causes, resulting from the construction and location of such inlet or from the opening thereof the owner of said private property shall have the right to maintain and prosecute an appropriate action against said inlet district for the damages resulting therefrom. And, provided, further, that before any construction work upon said inlet or waterway or upon the deepening of said river shall be undertaken, it shall be the duty of said chief engineer to prepare and submit to said Board a plan showing in detail the method to be employed in the construction of said inlet or waterway, or the deepening of said river, and providing for full and complete protection to adjacent property from any injury or damage which might follow as a result of the construction of said inlet or waterway or the deepening of said river. Said plans shall hereafter be submitted to and approved by a competent engineer, who is a recognized authority in works of that nature; and when so adopted and approved by said Board shall be adhered to in the construction work upon said inlet or waterway or the deepening of said river, unless it shall appear necessary as the work advances to modify said plans in order further to insure permanency in the location of said inlet or waterway, or the deepening of said river or for the protection of adjacent property, in which event a modification of said plans to accomplish said purpose may be permitted and regularly incorporated in said

plans, after having been approved by said consulting engineer and unanimously adopted by said Board."

Section 9 of the Act provides, in part, as follows:

"Said Board is further authorized and empowered to clean out, straighten, widen, change the course or flow of or deepen any other watercourse, natural stream or body of water that may be found to be necessary by said Board in order to facilitate the opening and maintenance of said inlet or waterway between the mouth of the St. Lucie River and the Atlantic Ocean or that may be found necessary to maintain a sufficient depth of water in said St. Lucie River, within said District; and said Board is authorized and empowered to construct and maintain canals, ditches, revetments, jetties and other works and improvements deemed by said Board to be necessary in the construction, preservation and maintenance of the work of said District; and said Board may construct any bridge or roadway over or across said levees, embankments, 'highways, railroads or over any canal or waterway in said District, and said Board is authorized and empowered to do and perform every act or thing which may be necessary to carry out the purposes of this Act." * * *

Section 2 of Chapter 15772, Act of 1931, provides:

"Each county, city, town, special road and bridge district, special tax school district, and other taxing districts in this State, herein sometimes called a unit, is hereby authorized to issue, pursuant to a resolution or resolutions of the governing body thereof (meaning thereby the board or body vested with the power of determining the amount of tax levies required for taxing the taxable property of such unit for the purpose of such unit) and either with or without the approval of such bonds at an election, except as may be required by the Constitution of the State, bonds of such unit for the purpose of refunding any or all bonds, coupons,

or interest on any such bonds, or coupons, or paving certificates of indebtedness or interest on any such paving certificates of indebtedness now or hereafter outstanding, or any other funded debt, all of which are herein referred to as bonds, whether such unit created such indebtedness or has assumed, or may become liable therefor, and whether indebtedness to be refunded has matured or to thereafter become matured."

Section 30 of Chapter 15772, Acts of 1931, provides:

"Refunding bonds provided to be issued under this Act shall be subject to validation and judicial proceedings in like manner and with like force and effect as bonds generally are provided to be validated by judicial proceedings under the laws of this State."

So the necessary conclusion is that if St. Lucie Inlet District is a drainage conservation or reclamation district, then the provisions of Chapter 12003, Acts of 1927, must be followed to vest jurisdiction in the Circuit Court to adjudicate the validity of proposed refunding bonds. The character of a taxing district is not necessarily determined by reference to the name applied in the statute creating same, but its status and character may be determined by reference to the legislatively declared purposes for which it is created.

For the reasons stated, re-hearing is granted and appellant is allowed ten days from the filing hereof to file brief, and appellee is allowed five days thereafter to file reply brief on the question as to whether or not St. Lucie Inlet District is a drainage conservation or reclamation district. No further oral argument will be required.

So ordered.

ELLIS, C. J. and TERRELL, J., concur.

WHITFIELD, P. J., and BROWN and DAVIS, J. J., concur in the opinion and judgment.

On Further Rehearing.

Per Curiam.—In our opinion filed herein on May 3, 1937, we quoted the pertinent parts of the Acts creating and establishing the powers and the purposes of St. Lucie Inlet District and Port Authority and also the pertinent parts of those legislative Acts authorizing the issuance of bonds and of refunding bonds.

As indicated in the opinion above referred to, the sole question now before us is, "Whether or not St. Lucie Inlet District and Port Authority is a drainage district or a conservation district or a reclamation district, so as to bring the issuance of bonds and of refunding bonds within the purview and control of chapter 12003, Acts of 1927.

The answer to this question must be determined by the provisions of the Act creating the district and the Acts amendatory thereto. The district was created under the provisions of Chapter 9631, Acts of 1923. The pertinent parts of that chapter are quoted in our opinion above referred to.

Chapter 11693, Acts of 1925, made no amendment which is of any consequence in connection with the matter now under discussion. Chapter 12254, Acts of 1929, merely changed the name to Martin-St. Lucie Counties Improvement District. Chapter 13808, Acts of 1929, abolished the old district and created a new district designated St. Lucie Inlet District and Port Authority. Sections 11, 12, and 13 of that Act are as follows:

"Section 11. With a view of creating, securing and maintaining a navigable channel adapted to the needs of general navigation and commerce, it shall be the duty of the Board of Commissioners of St. Lucie Inlet District and Port Authority to construct, maintain and improve St. Lucie Inlet between the St. Lucie River and the Atlantic Ocean and to construct, maintain and improve a channel

adapted to the needs of general navigation and commerce from said Inlet across the Indian River to a terminal site situated on the Westerly banks of the St. Lucie and Manatee Rivers at their point of confluence; and the said Board is further authorized and empowered to create within the said St. Lucie and Manatee Rivers in said District channels which shall in their judgment, meet the needs of general commerce and navigation and thereafter to maintain any and all said channels; and for the purposes and objects hereinabove defined, the said Board is further authorized and empowered to dredge and to make fills, to construct, improve and maintain jetties, revetments, slips, wharves, docks, warehouses, railways and highways, terminals and any and all other accessorial works, which, in the judgment of said Board of Commissioners, may be required to serve the need of general commerce and navigation as the same is now or may hereafter be conducted in connection with such inlet, harbor and waterways as may be owned or controlled by the St. Lucie Inlet District and Port Authority, or, which although not so owned, may be situated within the limits of the District herein created. The deepening of said rivers and/or waterways and/or other channels, the construction, maintenance and improvement of such inlet, harbor, waterways, rivers and/or other channels, jetties, revetments, slips, wharves, docks, warehouses, railways, highways, terminals and other accessorial works connected therewith are hereby found and declared to be for public purposes and to be necessary for the preservation of the public health and for the public use of shipping and/or other transportation utilities and for the extension of the general public navigation and/or commerce of the United States, of the State of Florida and of the District and of the inhabitants of said territory embraced in said

District and for the convenience and comfort and welfare of said District and the inhabitants thereof.

"Section 12. For the promotion of general navigation and commerce on the waterways embraced within the said Inlet District, the said Board is authorized and empowered to remove over-hanging trees and brush, snags, debris, shoals and obstructions of whatsoever nature which may interfere with navigation and/or to straighten, widen, change the course or flow of or deepen any and every natural stream, water course or waterway or body of water within the said District as, in the opinion of said Board, shall be necessary in order to facilitate the improvement and maintenance of said Inlet or waterways connecting the St. Lucie River with the Atlantic Ocean and the channel across the Indian River connecting said Inlet with the terminal site hereinabove described; and said Board is authorized and empowered to construct and maintain canals, ditches, revetments, jetties and other works and improvements deemed by said Board to be necessary in the construction, preservation or maintenance of the work of said District and said Board may construct any bridges or roadways over or across said rivers, embankments, highways, railroads or any canal or waterway in said District, and said Board is authorized and empowered to do and perform every act or thing which may be necessary to carry out the purposes of this Act. Said Board is further authorized and empowered to acquire for and on behalf of said District by purchase, condemnation, gift, or otherwise, such lands, easements, riparian rights and railway or other right-of-ways as said Board may deem necessary for the purposes of said District; and said Board may construct and maintain docks, wharves, buildings or other improvements of any kind or nature upon any of the properties which may be acquired by virtue of this Act. All inlets, waterways,

canals, jetties, channels or other similar works constructed·
or maintained by the said District under the provisions of
this Act, shall be constructed, held and maintained for the
public good and for public use, and for the benefit of
inhabitants of said District for shipping and transportation
purposes for the preservation of the public health and
welfare of said District, and for the extension of the com-
merce of the State of Florida and said District and the
inhabitants thereof, provided that nothing contained in this
Act shall be construed to authorize or empower the Board
of Commissioners of the St. Lucie Inlet District and Port
Authority to alter in anywise whatsoever the drainage canals
heretofore constructed under the auspices of the Everglades
Drainage District or other Districts, corporations or persons
created and/or operating under the statutes of the State of
Florida.

"Section 13. Said Board shall have the power and
authority to own, hold, control and acquire by gift, pur-
chase or lease for the use of the District any real and/or
personal property, and to condemn any lands, easements
and/or other property needed for the purposes of said
District. Said Board shall have the power of eminent do-
main and may thereby condemn and acquire real and/or per-
sonal property, which the Board may deem necessary for the
use of said District, whether within or without the same, and
whether the same is for the construction of a work of the
District, or is for the purpose of procuring material for the
use of said District in affecting the purposes of this Act,
or for the maintenance and preservation of the works and
improvements constructed or to be constructed under the
provisions of this Act. The Board may condemn for the
use of the District any and all lands, easements, rights-of-
ways, riparian rights, real and/or personal property; re-
quired for the purposes of the District, and may enter upon,

take and use such property, as it may deem necessary for such purposes pending condemnation proceedings. Said powers of condemnation shall be exercised in the same manner as is now provided by general law for the exercise of the powers of eminent domain by cities and towns of this State."

When we consider all these provisions in *pari materia* we arrive at the conclusion that the District exists for the incidental purposes of drainage, conservation and reclamation. But the paramount purpose for its creation and existence was, and is, to improve and serve general commerce and navigation and in this connection to make available the waterways existing and to be constructed within the District for the purpose of navigation and commerce.

We, therefore, hold that the issuance of bonds and of refunding bonds by such District does not come within the purview of the provisions of Chapter 12003, Acts of 1927. Therefore, it follows that the court below had jurisdiction and the decree appealed from should be affirmed on authority of the opinion and judgment in the case of State of Florida, *et al.*, v. Special Road and Bridge District No. 4 of Martin County, Florida, as per our Order filed herein on April 8, 1937, and it is so ordered.

TERRELL, BROWN, BUFORD and CHAPMAN, J. J., concur.